LINDA FARRIS, Petitioner v. BURKE COUNTY BOARD OF EDUCATION, Respondent

No. COA00-129

(Filed 17 April 2001)

**1. Schools and Education— career teacher—dismissal— notice of grounds**

A board of education was prohibited from basing the dismissal of a career teacher on grounds not stated in the N.C.G.S. § 115C-325(h)(2) notice provided to the teacher. The case manager correctly excluded evidence which was outside the basis asserted by the superintendent and the board improperly relied upon that evidence in making its decision.

**2. Schools and Education— career teacher—dismissal— copies of documentary evidence not provided**

A school board improperly relied upon pictures of a classroom and other documents in dismissing a career teacher where the teacher was not timely provided with copies and the case manager made no finding that the evidence was critical or that the evidence could not have been discovered prior to the hearing. The case manager properly excluded the evidence and the board, being bound by that determination under N.C.G.S. § 115C-325(j)(7), improperly relied upon that evidence.

**3. Schools and Education— career teacher—dismissal—case manager's findings—whole record review**

A school board was bound by a case manager's findings of fact involving the recommended dismissal of a career teacher and erred by making alternative findings where, viewing the whole record, there was substantial evidence to support the case manager's findings. The whole record review does not allow the board to replace the case manager's judgment in light of two reasonably conflicting views, but requires the board to determine the substantiality of the evidence by taking into account all of the evidence, both supporting and conflicting.

FARRIS v. BURKE CTY. BD. OF EDUC.

[143 N.C. App. 77 (2001)]

Appeal by petitioner from judgment dated 13 October 1999 by Judge Jesse B. Caldwell, III in Burke County Superior Court. Heard in the Court of Appeals 20 February 2001.

*Elliot Pishko Gelbin & Morgan, P.A., by J. Griffin Morgan, for petitioner-appellant.*

*Patton, Starnes, Thompson, Aycock, Teele & Ballew, P.A., by Larry A. Ballew, for respondent-appellee.*

*Tharrington Smith, L.L.P., by Michael Crowell; and General Counsel Allison B. Schafer for North Carolina School Boards Association, amicus curiae.*

*Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., by John W. Gresham; and Law Office of Thomas M. Stern, by Thomas M. Stern, for North Carolina Association of Educators, amicus curiae.*

GREENE, Judge.

Linda Farris (Petitioner) appeals the Burke County Superior Court's judgment dated 13 October 1999 affirming the Burke County Board of Education's (Respondent) decision to terminate Petitioner's employment with the school system.

Petitioner was employed by the Burke County Public Schools (BCPS) for approximately 28 years beginning in 1970 and "attained tenure and career status as a teacher." In 1990, Petitioner began teaching at Morganton Junior High which later merged into Liberty Middle School. Petitioner taught educable mentally handicapped students in the sixth, seventh, and eighth grades, who had IQ ranges from 55-77. Petitioner taught her students in a manner to help make the academic skills they were learning functional. For example: Petitioner taught her students math, reading, and vocabulary skills by teaching them how to read recipes and cook.

On 12 June 1998, Dr. Tony M. Stewart (Stewart), superintendent of BCPS, wrote Petitioner a letter informing her that Charles R. Sherrill (Sherrill), Principal at Liberty Middle School, recommended that Petitioner not be rehired for the upcoming school year and that Stewart agreed with Sherrill's recommendation. Stewart also indicated in his 12 June letter that he would like to meet with Petitioner in his office on 16 June 1998 "to review . . . in detail the facts which substantiate" his decision to recommend Petitioner's termination.

Petitioner did not respond to Stewart's 12 June letter. Stewart contacted Petitioner again by letter dated 29 June 1998 informing her that because she had not attended the 16 June meeting, she had waived her opportunity to respond to Stewart concerning the charges. Stewart also informed Petitioner in his 29 June letter that Petitioner had 14 days after receipt of the 29 June letter to file "a written request for either (i) a hearing on the grounds for [Stewart's] proposed recommendation by a case manager, or (ii) a hearing within five (5) days before [Respondent] on [Stewart's] recommendation." In the 29 June letter, Stewart stated:

**GROUNDS FOR DISMISSAL**

The grounds for your dismissal are inadequate performance, insubordination, and neglect of duty, pursuant to N.C.G.S. § 115C-325(e)(1)(a), (c), and (d).

**BASIS FOR THE CHARGES**

Attached to this letter . . . is a summary of the factual basis for my recommendation that you not be rehired for the coming school year. You have repeatedly ignored direct orders from your principals both oral and written. You [have] created, and refused to correct, health and fire hazards, which endangered your students. You [have] refused to follow directives regarding curriculum, and you misrepresented the status of your plan book.

The administration has demonstrated a thoughtful, patient, persistent but unavailing effort to get you to recognize that you were not properly managing your classroom and to correct the situation. Any and all of the referenced acts constitute inadequate performance, insubordination[,] and neglect of duty.

Stewart included a 9 page attachment chronologically listing documents and correspondences that substantiated his decision to terminate Petitioner. On 10 July 1998, Petitioner responded to Stewart's letter and requested a hearing before a case manager.

In a letter dated 12 August 1998, Petitioner requested Stewart provide her with a copy of the documents described in Stewart's 9 page attachment to his 29 June letter; on 20 August 1998, Stewart forwarded copies of the requested documents to Petitioner. On 31 August 1998, Petitioner requested Stewart to further provide her with a list of witnesses, a brief summary of the witnesses' testimony, and a copy of any documents Stewart intended to present at the hearing

FARRIS v. BURKE CTY. BD. OF EDUC.

[143 N.C. App. 77 (2001)]

before the case manager. Stewart provided Petitioner with a list of his witnesses on 31 August 1998, indicating he would call: Stewart; former principal Betty Terrell (Terrell); former principal Sherrill; former assistant principal Melinda Bollinger (Bollinger); Director of Exceptional Children Joel Hastings (Hastings); Petitioner's teacher assistant Beth Wright (Wright); and former principal Robert Patton (Patton). Stewart informed Petitioner that each of the witnesses would testify "about the events that culminated in [Stewart's] decision to recommend to [Respondent] that [Petitioner's] contract not be renewed." Stewart also indicated that with regard to the documents he planned to introduce, he could "present any of the documents that [he] ha[d] previously provided to [Petitioner]" as well as "reports from the [F]ire [M]arshall and possibly the [H]ealth [D]epartment, neither of which [were] currently in [his] possession."

The case manager's hearing was held on 3 September 1998 and was continued until 8 October 1998. After the hearing, the case manager's report (the report) included a ruling sustaining Petitioner's objections, made during the hearing, to: pictures of Petitioner's classroom that were offered as evidence at the hearing but not provided to Petitioner prior to the hearing; three letters that were not contained in the 29 July 1998 notice to Petitioner;[1] testimony of Wright "regarding field trips, telephone calls[,] and descriptions on non-teaching activities"; documents regarding Exceptional Children records; and testimony of Hastings regarding Exceptional Children records and Petitioner's relationship with a particular student. In her findings of fact, the case manager found, in pertinent part:

> [O]ver the course of 28 years, [Petitioner] acquired a large and wide variety of teaching materials that accumulated in her classroom and office to accommodate her students and their special needs. That [Petitioner's] classroom was cluttered with these items.
>
> 7. That the clutter in [Petitioner's] classroom was of concern to her various principals over the last four years. That at various times and on various occasions, these principals, [Terrell, Bollinger, and Sherrill] encouraged and requested [Petitioner] to clean her classroom. On several occasions, [Petitioner] was directed to clean her classroom. . . .

1. Of the three letters not contained in the 29 July 1998 notice to Petitioner, only one is contained in the record to this Court. The letter included in the record, Exhibit 9, dated 27 February 1995, is a letter from Petitioner to Guy M. McBride concerning "Adaptive Behaviors."

6. [sic] . . . That [Terrell] sent [Petitioner] a letter in March[] 1996 simply documenting that a general cleaning of her room had not been accomplished. That [Terrell] did not warn [Petitioner] that her behavior was insubordinate.

7. [sic] . . . That [Bollinger] wrote [Petitioner] that failure to clean the classroom would constitute insubordination. That [Petitioner] complied with that directive on the same day she received [Bollinger's] letter and notified [Bollinger] in writing of her compliance with these clear and specific instructions. . . .

8. . . . That on September 8, 199[7], [Sherrill] gave [Petitioner] specific directions regarding the cleaning of her classroom. Two months later on November 10, 1997, [Sherrill] noted compliance of his instructions by [Petitioner].

9. On February 10, 1998, in response to a call from the health department[,] all the classrooms at North Liberty School were inspected. Items of outdated food were found in [Petitioner's] classroom or office.

10. [Petitioner] was not giv[en] a warning, a plan for improvement[,] or any written notification that [Sherrill] viewed her as being insubordinate or having neglected her duty as a result of the food items that were found in her classroom or office.

11. That despite the ongoing differences regarding the condition of her classroom between [Petitioner] and her principals, . . . [Petitioner] was evaluated by both [Terrell and Bollinger] as being above standard in every teaching function. . . . [Sherrill] evaluated [Petitioner] as being standard in two of the categories he observed and below standard in the other three categories he observed. [Petitioner] was again evaluated on May 4, 1998 by evaluators who did have some training and experience in special education and was found to be performing at standard in each category they observed which were the same categories evaluated by [Sherrill]. On June 2, 1998, [Sherrill] completed a Teacher Performance Appraisal Instrument for [Petitioner]. He rated her a[s] being standard in the three categories in which he had previously found her to be below standard. Then, although never having given her any documentation or warnings, he rated her as being below standard or unsatisfactory in three categories in which he had never previously evaluated her.

12. That on two occasions, [Sherrill] claimed that [Petitioner] was insubordinate because she failed to have lesson plans in a lesson plan book as she had been instructed. [Sherrill] offered into evidence blank pages of a lesson plan book. However, additional pages obtained by [Sherrill] consist of lengthy instructions written for substitute teachers which would not fit within a lesson plan book. [Sherrill] did not request the lesson plan book from [Petitioner]. [Petitioner] testified that she maintained a lesson plan [book]. On May 4, 1998, [Petitioner] was observed by assistant principal Susan Jones and by Jeannette N. Davis. The Formative Observation Data Analysis of this observation does not note the failure to maintain a lesson plan book. That a former principal and a teacher of the in-school suspension program (ISS) at Liberty Middle School, testified that anytime one of [Petitioner's] students was sent to [ISS] they always came with a lesson plan.

13. Two long term special education teachers testified that they reviewed the individualized educational plans of [Petitioner's] students and [Petitioner's] lesson plan book. Ms. Horn testified that formal lesson plans were not always necessary in a special education class like the one [Petitioner] taught. Both teachers testified that the individualized education plans for [Petitioner's] students were well thought out and appropriate[]. Further, both teachers confirmed that [Petitioner's] method of teaching, including the utilization of recipes and field trips, were effective methods of teaching middle school educationally mentally handicapped children and focused on appropriate lessons which would help these children in the future.

. . . .

16. Except for his approximately one hour observation of [Petitioner] on December 8, 1997, [Sherrill] spent no other time observing [Petitioner] or monitoring her teaching ability. [Sherrill] failed to make suggestions to [Petitioner] for professional improvement following his December 8, 1997 observation and evaluation of [Petitioner]. Following his December 8, 1997 observation of [Petitioner], [Sherrill] did not provide [Petitioner] any assistance in becoming a more effective teacher. He did not devise a professional growth plan. He did not request the assistance of other special education teachers or of [Hastings] . . . . [Sherrill] failed to document[] ways in which he had helped

[Petitioner] become a more effective professional at a time when he was recommending her dismissal.

17. There was a[n] evidentiary objection as to the maintenance of IEP folders by [Petitioner]. The only evidence introduced to show that [Petitioner] had not properly maintained the IEP folders was the testimony of [Hastings]. This evidence is outside the factual basis stated by [Stewart] as the basis for his decision to terminate [Petitioner].

18. Four parents of former students of [Petitioner] testified at the hearing. Each parent testified as to having observed [Petitioner] in the classroom or on field trips. Each parent testified that his/her child made progress in [Petitioner's] classroom. Each parent testified that if given the opportunity they would have [Petitioner] teach their child again.

19. [Petitioner] was not insubordinate and did not willfully disregard directions of her employer or refuse to obey a reasonable order.

20. [Petitioner's] teaching performance was not inadequate.

21. [Petitioner] did not neglect her duty.

Consistent with these findings of fact, the case manager recommended in the report that Stewart's grounds for Petitioner's dismissal were not substantiated.

On 9 November 1998, Stewart wrote Petitioner and informed her he intended to submit a written recommendation to Respondent that Petitioner be dismissed. In response, Petitioner requested a hearing before Respondent. In a letter dated 18 November 1998, Stewart recommended to Respondent the termination of Petitioner, stating:

The grounds for my recommendation are inadequate performance, insubordination, and neglect of duty, pursuant to N.C.G.S. § 115C-325(e)(1)(a), (c)[,] and (d). [Petitioner] repeatedly ignored direct orders, both oral and written, from principals. [Petitioner] created, and refused to correct, health and fire hazards, including giving special education children seriously outdated food, all of which endangered her students. [Petitioner] refused to follow directives regarding curriculum, and she misrepresented the status of her [lesson] plan book.

The administration has demonstrated a thoughtful, patient, persistent but unavailing effort to get [Petitioner] to recognize that she was not properly managing her classroom.

On 18 November 1998, Stewart forwarded to Respondent the entire record of the hearing held before the case manager, including a transcript of the hearing and all exhibits presented by either side.[2] No new evidence outside of the record of the hearing held before the case manager was presented before Respondent. Petitioner and Stewart were permitted to make oral arguments before Respondent in a closed session.

On 12 January 1998, Respondent "unanimously determined that the case manager's findings of fact were not supported by substantial evidence when the record was reviewed as a whole and therefore made . . . alternative findings of fact." The alternative findings of fact provided, in pertinent part:

44. At the case manager['s] hearing, [Wright], the teacher assistant in [Petitioner's] classroom for the previous two years[,] stated, and we find as fact, that [Petitioner] would spend as much as three to four hours per day on the telephone, leaving the kids to the assistant to teach. The telephone conversations were unrelated to the classroom and concerned with [Petitioner's] joint-venture in a flea market, her massage business, or the psychic hot-line.

. . . .

48. [Petitioner] did not spend a complete day doing instruction to the children, during the two years that [Wright] was her assistant. The most time that [Petitioner] spent in one day actually teaching was two hours. [Petitioner] spent less than 10% of her time actually teaching the children in her care.

. . . .

54. [Petitioner] took the class on a field trip to the Biltmore House in Asheville. The children's parents were told that the children would be back at 5:00 p.m. [Petitioner] did not have the children back until 8:00 p.m. and did not call anyone to say they would return late. The reason they were late returning is because [Petitioner] wanted to go shopping after the field trip.

---

2. In a letter dated 21 December 1998, Petitioner objected to Stewart forwarding to Respondent evidence which had been excluded by the case manager.

55. Pictures taken of [Petitioner's] classroom illustrated the testimony shown in the transcripts. The classroom was cluttered, old food was present throughout the room and the storage areas, roach droppings and a rat's nest were clearly visible.

56. In March of 1998, the Director for Exceptional Children, [Hastings], in a review of the Exceptional Children records in [Petitioner's] class were incomplete. [Hastings] directed [Petitioner] to make the necessary corrections. [Hastings'] testimony was that such incomplete records could have resulted in a loss of funding had they not be[en] corrected before an audit.

After making alternative findings of fact, Respondent determined Stewart's grounds for dismissal were substantiated and it thereby terminated Petitioner's employment with BCPS. Petitioner subsequently appealed to the Burke County Superior Court. The Burke County Superior Court affirmed Respondent's decision to terminate Petitioner concluding Respondent's decision was "supported by substantial evidence from the whole record."

---

The issues are whether: (I) evidence is admissible in a section 115C-325(j) or (j2) hearing when that evidence is outside the scope of the section 115C-325(h)(2) notice provided by the superintendent to the career teacher; (II) an exhibit is admissible in a section 115C-325(j) or (j2) hearing when the superintendent has not provided the career teacher a copy of the exhibit, pursuant to section 115C-325(j)(5); and (III) the findings of the case manager are supported by substantial evidence.

I

[1] Petitioner argues section 115C-325 prohibits Respondent from basing Petitioner's dismissal on grounds not stated in the section 115C-325(h)(2) notice provided to Petitioner. We agree.

Before a superintendent of public instruction for a county school system (the superintendent) may recommend to the board of education (the board) the dismissal of a career teacher, as defined within the meaning of N.C. Gen. Stat. § 115C-325(c)(1), the superintendent is required to give the career teacher "written notice of the charges against [her], an explanation of the basis for the charges, and an opportunity [for the career teacher] to respond." N.C.G.S. § 115C-325(h)(2) (1999). It follows that any evidence of-

fered outside the scope of this notice is not admissible in a section 115C-325(j) or (j2) hearing and, thus, cannot support dismissal of a career teacher. *See Baxter v. Poe*, 42 N.C. App. 404, 408-09, 257 S.E.2d 71, 74 (due process requirements are satisfied if dismissal procedures are followed and the teacher is given adequate notice), *disc. review denied*, 298 N.C. 293, 259 S.E.2d 298 (1979). The superintendent's notice shall also include a "statement to the effect that if the career [teacher] within 14 days after the date of receipt of the notice requests a review, [she] shall be entitled to have the grounds for the proposed recommendations of the superintendent reviewed by a case manager." N.C.G.S. § 115C-325(h)(2).

In this case, Stewart gave Petitioner, a career teacher, notice of the grounds for her dismissal and an explanation of the basis for her dismissal on 29 June 1998. The grounds asserted were: insubordination, inadequate performance, and neglect of duty. The factual basis for these grounds was that Petitioner: repeatedly ignored both oral and written direct orders from her principals; created, yet refused to correct, health and fire hazards; refused to follow directives regarding curriculum; and misrepresented the status of her lesson plan book. The evidence excluded by the case manager relating to Petitioner's field trips, telephone calls to a psychic hot-line, non-teaching activities, maintenance of Exceptional Children records, and relationship with a particular student, was simply outside the scope of the basis asserted by Stewart. Accordingly, the case manager correctly excluded this evidence and Respondent, being bound by that determination, improperly relied on this evidence in making its decision. *See* N.C.G.S. § 115C-325(j)(7) (1999) (case manager to decide questions of procedure and evidence); *see also* N.C.G.S. § 115C-325(j)(4) (1999) (rules of evidence do not apply).

II

[2] If the career teacher elects to have a hearing before the case manager, the superintendent, prior to the hearing before the case manager, shall provide to the career teacher: "a list of witnesses the superintendent intends to present[;] a brief statement of the nature of the testimony of each witness[;] and a copy of any documentary evidence the superintendent intends to present." N.C.G.S. § 115C-325(j)(5) (1999). Additional witnesses or documentary evidence not previously provided by the superintendent "may not be presented except upon a finding by the case manager that the new evidence is critical to the matter at issue and the party making the request could not, with rea-

sonable diligence, have discovered and produced the evidence according to the schedule provided" in section 115C-325(j). *Id.*

In this case, Stewart did not timely provide Petitioner with copies of pictures of her classroom or copies of documents concerning Exceptional Children records[3] and the case manager made no finding that the evidence was critical or that Stewart could not have discovered this evidence prior to the hearing. Accordingly, the case manager properly excluded this evidence and Respondent, being bound by that determination, improperly relied on this evidence. *See* N.C.G.S. § 115C-325(j)(7) (case manager to decide questions of procedure and evidence); *see also* N.C.G.S. § 115C-325(j)(4) (rules of evidence do not apply).

## III

**[3]** "The board shall accept the case manager's findings of fact unless a majority of the board determines that the findings of fact are not supported by substantial evidence when reviewing the record as a whole." N.C.G.S. § 115C-325(j2)(7) (1999). If after reviewing the "whole record," the board determines the case manager's findings of fact are unsupported by substantial evidence, "the board shall make alternative findings of fact." *Id.* In conducting a "whole record" review, the board must review all the evidence that was admitted by the case manager. *See Taborn v. Hammonds,* 324 N.C. 546, 551, 380 S.E.2d 513, 516 (1989). A "whole record" review, however, does not allow the board to replace the case manager's judgment in light of two reasonably conflicting views, but requires the board to "determine the substantiality of the evidence by taking all the evidence, both supporting and conflicting, into account." *See Powell v. N.C. Dept. of Transp.,* 347 N.C. 614, 623, 499 S.E.2d 180, 185 (1998) (applied in the context of conducting a "whole record" review of an agency decision).

In this case, viewing the "whole record," there was substantial evidence to support the case manager's findings of fact. *See Thompson v. Wake County Bd. of Educ.,* 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977) (substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion") (citations omit-

---

3. Although the case manager sustained Petitioner's objection to three letters Stewart had not provided to Petitioner prior to the case manager hearing, only one of those letters is included in the record to this Court and there is no indication that Respondent relied on this letter in its alternative findings of fact. Accordingly, we do not address whether this letter could form a basis for Petitioner's dismissal.

ted). Respondent was bound by the findings of the case manager and, therefore, erred in making alternative findings of fact.

Accordingly, the decision of the Burke County Superior Court is reversed and this case is remanded to that court for further remand to Respondent for it to either reject Stewart's recommendation or "accept or modify the recommendation and dismiss, demote, reinstate, or suspend" Petitioner. N.C.G.S. § 115C-325(j1)(5) (1999). Respondent's decision must be based on the findings made by the case manager.

Reversed and remanded.

Judges McCULLOUGH and HUDSON concur.