LINDA FARRIS, Petitioner v. BURKE COUNTY BOARD OF EDUCATION, Respondent

No. 272PA01

(Filed 7 March 2002)

**1. Schools and Education— dismissal of teacher—case manager's report—school board review—whole record test—judicial review**

The whole record test is mandated by N.C.G.S. § 115C-325(j2)(2) for a school board's review of a case manager's report and recommendation concerning a career teacher. Judicial review of the school board's action is under N.C.G.S. § 150B-51; in this case, the school board's action was reviewed for "wrongful procedure."

**2. Schools and Education— dismissal of teacher—case manager hearing—exclusion of evidence—notice requirements**

The case manager did not err by excluding evidence from a hearing concerning the dismissal of a career teacher where the evidence was not included in the list of witnesses and exhibits furnished to the teacher. Although the formal rules of evidence do not apply to a hearing before a case manager, there is no ambiguity in the notice requirements of N.C.G.S. § 115C-325(j)(5). While a superintendent is not required to set out the facts supporting termination in complete detail, the excluded evidence in this case was readily available at the time the synopsis of the evidence was prepared and its prejudicial impact was readily apparent.

**3. Schools and Education— dismissal of teacher—review of case manager's decision—whole record considered by case manager**

A school board initially reviewing the results of a case manager's hearing on the dismissal of a career teacher is bound by the whole record admitted and considered by the case manager. The board may view evidence excluded by the case manager but later submitted to the board in making its initial determination of whether the case manager addressed all critical issues, but N.C.G.S. § 115C-325(j2)(7) contemplates a remand to the case manager if the majority of the board determines that the case manager did not address a critical factual issue. In this case, the

FARRIS v. BURKE CTY. BD. OF EDUC.

[355 N.C. 225 (2002)]

board failed to follow the statutory procedure and is bound by the case manager's findings of fact.

**4. Schools and Education— dismissal of teacher—case manager's report—conclusions of law excluded**

Respondent school board, when considering the remanded dismissal of a career teacher, shall not consider certain paragraphs in the case manager's report because those paragraphs amounted to conclusions of law.

**5. Schools and Education— dismissal of teacher—ex parte contact between board and attorney—due process**

A career teacher's due process rights were not violated in her dismissal where she alleged that the decision was not made by an unbiased and impartial decision-maker, based upon identical findings of fact in the school board's decision and proposed findings submitted to the case manager by an attorney whose role was equivocal. Although the teacher argued that the only reasonable inference was improper ex parte contact, she failed to establish a record supporting her contention; there is no reason on this record to make any assumption other than that the respondent, after making its decision, asked the attorney to prepare findings, as is common in civil cases. In the absence of evidence to the contrary, N.C.G.S. § 115C-44(b) requires an interpretation of the record consistent with proper action by all parties.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 143 N.C. App. 77, 544 S.E.2d 578 (2001), reversing and remanding a judgment signed by Caldwell, J., on 13 October 1999 in Superior Court, Burke County. On 19 July 2001, the Supreme Court allowed petitioner's conditional petition for discretionary review as to an additional issue. Heard in the Supreme Court 12 December 2001.

*Elliot Pishko Gelbin & Morgan, P.A., by J. Griffin Morgan, for petitioner-appellant and -appellee.*

*Starnes, Teele, Aycock & Haire, P.A., by Samuel E. Aycock, for respondent-appellant and -appellee.*

*Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., by John W. Gresham and S. Luke Largess, on behalf of the North Carolina Association of Educators, amicus curiae.*

**FARRIS v. BURKE CTY. BD. OF EDUC.**

[355 N.C. 225 (2002)]

*Tharrington Smith, L.L.P., by Michael Crowell, on behalf of the North Carolina School Boards Association, amicus curiae.*

EDMUNDS, Justice.

Petitioner Linda Farris (petitioner) was employed by respondent Burke County Board of Education (respondent), teaching educable mentally handicapped children in the sixth, seventh, and eighth grades. Petitioner began her employment with respondent in 1970 and thereafter attained tenured status as a teacher.

The record indicates that petitioner's teaching methods and skills were considered acceptable and unremarkable through most of her career. However, in 1998, doubts arose. On 12 June 1998, Dr. Tony M. Stewart (Stewart), respondent's superintendent, wrote petitioner to inform her that the principal of her school, Charles W. Sherrill, had recommended that petitioner not be rehired for the upcoming school year and that Stewart agreed with the recommendation. In that same letter, Stewart added that he wished to meet with petitioner on 16 June 1998 to review with her the facts behind this decision.

When petitioner failed to meet with Stewart after receiving his 12 June 1998 letter, he sent her a second letter on 29 June 1998. This letter advised petitioner that she had waived her opportunity to respond to Stewart about the recommendation that she not be rehired and, in addition, informed her that she had fourteen days to file a request in writing for either "(i) a hearing on the grounds for [Stewart's] proposed recommendation by a case manager, or (ii) a hearing within five (5) days before the board [i.e., respondent] on [Stewart's] recommendation." The letter included the following language:

GROUNDS FOR DISMISSAL

The grounds for your dismissal are inadequate performance, insubordination, and neglect of duty, pursuant to N.C.G.S. § 115C-325(e)(1)(a), (c), and (d).

BASIS FOR THE CHARGES

Attached to this letter . . . is a summary of the factual basis for my recommendation that you not be rehired for the coming school year. You have repeatedly ignored direct orders from your principals[,] both oral and written. You created, and refused to correct, health and fire hazards, which endangered your students.

You refused to follow directives regarding curriculum, and you misrepresented the status of your plan book.

The administration has demonstrated a thoughtful, patient, persistent but unavailing effort to get you to recognize that you were not properly managing your classroom and to correct the situation. Any or all of the referenced acts constitute inadequate performance, insubordination[,] and neglect of duty.

Stewart attached to this letter a nine-page "Chronological Listing Documentation & Correspondence Concerning [Petitioner]." This list, intended to substantiate the decision to terminate petitioner, detailed letters, conferences, memoranda, and the like circulated between petitioner and others in the school system.

On 10 July 1998, petitioner responded by requesting a hearing before a case manager, and in a letter dated 12 August 1998, petitioner asked Stewart to provide her copies of the documents described in the attachment to his 29 June 1998 letter. Stewart complied on 20 August 1998. On 31 August 1998, petitioner requested from Stewart a list of witnesses, a summary of the witnesses' anticipated testimony, and a copy of any documents Stewart intended to provide the case manager at the upcoming hearing. That same day, Stewart provided petitioner a list of potential witnesses. The list also included the following information:

Each of the above individuals will testify about the events that culminated in Dr. Stewart's decision to recommend to [respondent] that [petitioner's] contract not be renewed for the next year.

With regard to documents that I plan to introduce, I may present any of the documents that I have previously provided to you. Additionally, I will present reports from the fire marshall [sic] and possibly the health department, neither of which are [sic] currently in my possession.

The hearing before the case manager was held on 3 September 1998 and 8 October 1998. At the hearing, petitioner objected to certain evidence that had not been set out in Stewart's 29 June 1998 notice. This evidence included photographs of petitioner's classroom purporting to show roach droppings and a rat's nest in addition to clutter, letters to petitioner, and the testimony of two witnesses whose names had been provided, but not the pertinent substance of their testimony. One of these witnesses, Beth Wright (Wright), peti-

tioner's teacher assistant, testified that petitioner used classroom time to talk to friends on the telephone and to call a psychic hotline, that petitioner had returned her students three hours late from a field trip to Biltmore Estate because petitioner spent over an hour and a half in the gift shop, that petitioner had called an African-American student a "monkey," that petitioner would give massages to individuals while students were present in the classroom, and that petitioner spent only about ten percent of her time teaching. The other witness, Joel Hastings (Hastings), Director of Exceptional Children, testified about petitioner's failure to maintain some of her students' records necessary for continued state and federal funding, and petitioner's relationship with a particular student. Hastings also expressed concern that "there was the lack of quality individualized instruction in the [petitioner's] classroom, plus there was a fear of intimidation if someone went to an administrator about those concerns." The case manager held in abeyance her rulings on petitioner's objections to this evidence.

On 9 November 1998, the case manager filed a report that included findings of fact and a recommendation that Stewart's grounds for petitioner's dismissal were not substantiated by a preponderance of the evidence. That same day, Stewart wrote petitioner informing her that he intended to submit a written recommendation to respondent that petitioner be terminated. Accordingly, petitioner requested a hearing before respondent. On 18 November 1998, Stewart recommended in writing to respondent that petitioner be terminated, stating:

The grounds for my recommendation are inadequate performance, insubordination, and neglect of duty, pursuant to N.C.G.S. § 115C-325(e)(1)(a), (c)[,] and (d). [Petitioner] repeatedly ignored direct orders, both oral and written, from principals. [Petitioner] created, and refused to correct, health and fire hazards, including giving special education children seriously outdated food, all of which endangered her students. [Petitioner] refused to follow directives regarding curriculum, and she misrepresented the status of her [lesson] plan book.

The administration has demonstrated a thoughtful, patient, persistent but unavailing effort to get [petitioner] to recognize that she was not properly managing her classroom.

Pursuant to requests by both parties, on 24 November 1998, the case manager filed an "Amended Report of Case Manager" in which

FARRIS v. BURKE CTY. BD. OF EDUC.

[355 N.C. 225 (2002)]

she made rulings on evidentiary challenges raised at the hearing, sustaining petitioner's objections to the photographs and the evidence described above offered by Wright and Hastings. In particular, the case manager found that the photographs had not been provided to petitioner in advance of the hearing, as required by N.C.G.S. § 115C-325(j)(5); that the letters were both insufficiently specific to allow petitioner to prepare a defense and outside the scope of the notice provided petitioner by Stewart; and that the testimony of Wright and much of the testimony of Hastings were insufficiently specific and outside the scope of the notice provided petitioner. However, Hastings' testimony as to one inspection of petitioner's classroom, where outdated food was discovered, was admitted. Accordingly, the excluded evidence was not included in the case manager's findings of fact in her amended report, which read in pertinent part:

> 5. That [petitioner] has taught for 28 years in the Burke County Public Schools as a special education teacher. That during the last eight years [petitioner] has taught a self-contained class for the educationally and mentally handicapped. . . .

> 6. That each student in [petitioner's] class was required to be taught based on the student's individualized educational plan (IEP). That over the course of 28 years, [petitioner] acquired a large and wide variety of teaching materials that accumulated in her classroom and office to accommodate her students and their special needs. That [petitioner's] classroom was cluttered with these items.

> 7. That the clutter in her classroom was of concern to her various principals over the last four years. That at various times and on various occasions, these principals . . . encouraged and requested [petitioner] to clean her classroom. On several occasions, [petitioner] was directed to clean her classroom.

> 6. [sic] That during 1995 through 1996, Betty Terrell was the principal at Liberty Middle School[1] and [petitioner's] assigned principal. . . . That Ms. Terrell sent [petitioner] a letter in March, 1996 simply documenting that a general cleaning of her room had

1. The record indicates that petitioner originally was teaching at Liberty Middle School. However, during part of the time of the events discussed in this opinion, she was assigned a classroom at North Liberty School and placed under the supervision of the principal of North Liberty School, while still considered a teacher at Liberty Middle School.

FARRIS v. BURKE CTY. BD. OF EDUC.

[355 N.C. 225 (2002)]

not been accomplished. That Ms. Terrell did not warn [petitioner] that her behavior was insubordinate.

7. [sic] That during 1996 through 1997, Malinda Bollinger was the principal of North Liberty [] School and [petitioner's] assigned principal. . . . On August 14, 1996, Ms. Bollinger specifically directed [petitioner] to clean her classroom and store materials and supplies. That Ms. Bollinger wrote [petitioner] that failure to clean the classroom would constitute insubordination. That [petitioner] complied with that directive on the same day she received Ms. Bollinger's letter and notified Ms. Bollinger in writing of her compliance with these clear and specific instructions. . . .

8. That during 1997 through 1998, Mr. Sherrill was the principal of Liberty Middle School and [petitioner's] assigned principal. That on September 8, 199[7], Mr. Sherrill gave [petitioner] specific directions regarding the cleaning of her classroom. Two months later on November 10, 1997, Mr. Sherrill noted compliance of his instructions by [petitioner].

9. On February 10, 1998, in response to a call from the health department, all the classrooms at North Liberty School were inspected. Items of outdated food were found in [petitioner's] classroom or office.

10. [Petitioner] was not given a warning, a plan for improvement or any written notification that Mr. Sherrill viewed her as being insubordinate or having neglected her duty as a result of the food items that were found in her classroom or office.

11. That despite the ongoing differences regarding the condition of her classroom between [petitioner] and her principals, . . . [petitioner] was evaluated by both Ms. Terrell and Ms. Bollinger as being above standard in every teaching function. [Petitioner] was observed and evaluated by Mr. Sherrill on December 8, 1997. . . . Mr. Sherrill evaluated [petitioner] as being standard in two of the categories he observed and below standard in the other three categories he observed. [Petitioner] was again evaluated on May 4, 1998 by evaluators who did have some training and experience in special education and was found to be performing at standard in each category they observed which were the same categories evaluated by Mr. Sherrill. On June 2, 1998, Mr. Sherrill completed a Teacher Performance Appraisal

Instrument for [petitioner]. He rated her at being standard in the three categories in which he had previously found her to be below standard. Then, although never having given her any documentation or warnings, he rated her as being below standard or unsatisfactory in three categories in which he had never previously evaluated her.

12. That on two occasions, Mr. Sherrill claimed that [petitioner] was insubordinate because she failed to have lesson plans in a lesson plan book as she had been instructed. Mr. Sherrill offered into evidence blank pages of a lesson plan book. However, additional pages obtained by Mr. Sherrill consist of lengthy instructions written for substitute teachers which would not fit within a lesson plan book. Mr. Sherrill did not request the lesson plan book from [petitioner]. [Petitioner] testified that she maintained a lesson plan. On May 4, 1998, [petitioner] was observed by assistant principal Susan Jones and by Jeannette N. Davis. The Formative Observation Data Analysis of this observation does not note the failure to maintain a lesson plan book. That a former principal and a teacher of the in-school suspension program (ISS) at Liberty Middle School, testified that anytime one of [petitioner's] students was sent to in-school suspension they always came with a lesson plan.

13. Two long[-]term special education teachers testified that they reviewed the individualized educational plans of [petitioner's] students and [petitioner's] lesson plan book. Ms. Horn testified that formal lesson plans were not always necessary in a special education class like the one [petitioner] taught. Both teachers testified that the individualized education plans for [petitioner's] students were well thought out and appropriated [sic]. Further, both teachers confirmed that [petitioner's] method of teaching, including the utilization of recipes and field trips, were [sic] effective methods of teaching middle school educationally mentally handicapped children and focused on appropriate lessons which would help these children in the future.

. . . .

16. Except for his approximately one hour observation of [petitioner] on December 8, 1997, Mr. Sherrill spent no other time observing [petitioner] or monitoring her teaching ability. Mr. Sherrill failed to make suggestions to [petitioner] for professional improvement following his December 8, 1997 observation and

evaluation of [petitioner]. Following his December 8, 1997 observation of [petitioner], Mr. Sherrill did not provide [petitioner] any assistance in becoming a more effective teacher. He did not devise a professional growth plan. He did not request the assistance of other special education teachers or of [Hastings]. . . . Mr. Sherrill failed to document[] ways in which he had helped [petitioner] become a more effective professional at a time when he was recommending her dismissal.

17. There was a[n] evidentiary objection as to the maintenance of IEP folders by [petitioner]. The only evidence introduced to show that [petitioner] had not properly maintained the IEP folders was the testimony of Mr. Hastings. This evidence is outside the factual basis stated by Dr. Stewart as the basis for his decision to terminate [petitioner].

18. Four parents of former students of [petitioner] testified at the hearing. Each parent testified as to having observed [petitioner] in the classroom or on field trips. Each parent testified that his/her child made progress in [petitioner's] classroom. Each parent testified that if given the opportunity they would have [petitioner] teach their child again.

19. [Petitioner] was not insubordinate and did not willfully disregard directions of her employer or refuse to obey a reasonable order.

20. [Petitioner's] teaching performance was not inadequate.

21. [Petitioner] did not neglect her duty.

Based on these findings, the case manager recommended that "the [s]uperintendent's grounds for dismissal are not substantiated by a preponderance of [the] evidence."

The case manager's amended findings did not affect Stewart's decision to proceed to a hearing before respondent. Accordingly, Stewart forwarded to respondent the entire record of the hearing held before the case manager, including the evidence to which petitioner's objections had been sustained. On 21 December 1998, petitioner wrote attorney Larry A. Ballew (Ballew), objecting to the material that had been excluded by the case manager. On 12 January 1999, respondent held a hearing on this matter. It heard no evidence in addition to that presented to the case manager, but petitioner and Stewart were permitted to make oral arguments before respondent in

a closed session. Respondent "unanimously determined that the case manager's findings of fact were not supported by substantial evidence when the record was reviewed as a whole and therefore made . . . alternative findings of fact." These "alternative findings of fact" included matters excluded by the case manager:

44. At the case manager['s] hearing, [Wright], the teacher assistant in [petitioner's] classroom for the previous two years stated, and we find as a fact, that [petitioner] would spend as much as three to four hours per day on the telephone, leaving the kids to the assistant to teach. The telephone conversations were unrelated to the classroom and concerned [] [petitioner's] joint-venture in a flea market, her massage business, or the psychic hot-line.

. . . .

48. [Petitioner] did not spend a complete day doing instruction to the children, during the two years that [Wright] was her assistant. The most time that [petitioner] spent in any one day actually teaching was two hours. [Petitioner] spent less than 10% of her time actually teaching the children in her care.

. . . .

53. [Petitioner] referred to a black student as a "monkey." This racial slur caused the student and his parents great concern.

54. [Petitioner] took the class on a field trip to the Biltmore House in Asheville. The children's parents were told that the children would be back at 5:00 p.m. [Petitioner] did not have the children back until 8:00 p.m. and did not call anyone to say they would return late. The reason they were late returning is because [petitioner] wanted to go shopping after the field trip.

55. Pictures taken of [petitioner's] classroom illustrated the testimony shown in the transcripts. The classroom was cluttered, old food was present throughout the room and the storage areas, [and] roach droppings and a rat's nest were clearly visible.

56. In March of 1998, the Director for Exceptional Children, [Hastings], in a review of the Exceptional Children records in [petitioner's] class were incomplete [sic]. Mr. Hastings directed [petitioner] to make the necessary corrections. Mr. Hastings['] testimony was that such incomplete records could

have resulted in a loss of funding had they not be[en] corrected before an audit.

Respondent concluded that its findings "substantiate the [s]uperintendent's grounds for dismissal, inadequate performance, insubordination, and neglect of duty as set forth in N.C.G.S. § 115C-325(e)(1)(a), (c)[,] and (d)" and that petitioner did not suffer any prejudicial error. Accordingly, respondent terminated petitioner's employment.

Petitioner appealed to the Superior Court, Burke County. That court held that respondent's decision to terminate petitioner was supported by substantial evidence from the whole record and affirmed the termination decision. Petitioner appealed to the North Carolina Court of Appeals, which reversed and remanded the case to the Superior Court, Burke County, "for further remand to [r]espondent for it to either reject Stewart's recommendation or 'accept or modify the recommendation and dismiss, demote, reinstate, or suspend' [p]etitioner. N.C.G.S. § 115C-325(j1)(5) (1999). Respondent's decision must be based on the findings made by the case manager." *Farris v. Burke Cty. Bd. of Educ.*, 143 N.C. App. 77, 88, 544 S.E.2d 578, 585 (2001). This Court allowed respondent's petition for discretionary review to consider the Court of Appeals' interpretation of the statutes applicable to teacher dismissal. We also allowed petitioner's conditional petition for discretionary review to consider an issue that had been raised by assignment of error in the Court of Appeals but not resolved in that court's opinion, that is, whether petitioner's due process rights to have the termination decision made by an impartial decision-maker had been violated. As to the first issue, we affirm the holding of the Court of Appeals, as modified below. As to the second issue, we overrule petitioner's assignment of error.

I.

[1] To avoid possible confusion, we take this opportunity to clarify the standard of review. Respondent school board's review of the case manager's report and recommendation is controlled by N.C.G.S. § 115C-325(j2)(2). Although respondent purported to apply the 'whole record test' mandated by this statute in its initial review of the case manager's amended report, we hold that respondent did not administer this test properly, as detailed below. However, a different statute controls judicial review of a school board's action. Accordingly, we apply the standards set out in N.C.G.S. § 150B-51. *Overton v. Goldsboro City Bd. of Educ.*, 304 N.C. 312, 283 S.E.2d 495

(1981). In light of the particular posture of the case at bar, we review respondent's action to determine whether its decision was based upon "wrongful procedure." N.C.G.S. § 150B-51(b)(3) (1999); *see Evers v. Pender Cty. Bd. of Educ.*, 104 N.C. App. 1, 407 S.E.2d 879 (1991), *aff'd per curiam*, 331 N.C. 380, 416 S.E.2d 3 (1992).

**[2]** We first consider the procedure followed by the case manager and by respondent. As detailed above, Stewart provided petitioner with an extensive list of witnesses and exhibits in his 12 August 1998 notice. However, the list was not comprehensive, and Stewart presented additional evidence at the hearing before the case manager, including photographs of petitioner's classroom and testimony relating to petitioner's classroom behavior. Petitioner objected, and the case manager ultimately sustained the objection and excluded the evidence.

We hold that the case manager's decision to exclude the evidence was proper. Although the statute provides that formal rules of evidence do not apply to a hearing before a case manager, N.C.G.S. § 115C-325(j)(4), there is no ambiguity in the notice requirements set out in section 115C-325(j)(5), which provides in pertinent part:

> At least five days before the hearing [before a case manager], the superintendent shall provide to the career employee a list of witnesses the superintendent intends to present, a brief statement of the nature of the testimony of each witness and a copy of any documentary evidence the superintendent intends to present. . . . Additional witnesses or documentary evidence may not be presented except upon a finding by the case manager that the new evidence is critical to the matter at issue and the party making the request could not, with reasonable diligence, have discovered and produced the evidence according to the schedule provided in this subdivision.

N.C.G.S. § 115C-325(j)(5). While Stewart did provide in apt time the names of all witnesses, his summary of the evidence to be presented by those witnesses omitted significant portions of their testimony, such as petitioner's alleged neglect of her students so she could use the telephone and the delayed return from the Biltmore Estate. In addition, petitioner was not provided copies of the photographs of her classroom that purportedly showed a cluttered and unsanitary environment. There is no suggestion in the record that this evidence could not have been discovered with reasonable diligence and produced to petitioner in accordance with the statutory

timetable. Consequently, the case manager's only choice was to exclude this evidence.

In so holding, we do not suggest that a superintendent is required to set out the facts supporting a case for termination in complete detail prior to a hearing before a case manager. The provisions of chapter 115C do not mirror the discovery proceedings in either criminal or civil cases. Stewart's provision to petitioner of a nine-page synopsis of the evidence was a commendable effort to ensure the statutory requirements were met. Nevertheless, the excluded evidence was available to Stewart at the time the synopsis was prepared and its prejudicial impact was readily apparent, but it was not included in the "brief statement of the nature of the testimony of [the] witness," N.C.G.S. § 115C-325(j)(5). Under the facts before us, we believe the existence of this evidence should have been disclosed to petitioner prior to the hearing.

[3] Stewart then resubmitted to respondent all the evidence that had been submitted at the case manager's hearing, including the evidence that had been excluded by the case manager. Stewart's theory in so doing was that respondent could consider the excluded evidence pursuant to section 115C-325(j2)(7), which provides in pertinent part:

> The board shall accept the case manager's findings of fact unless a majority of the board determines that the findings of fact are not supported by substantial evidence when reviewing the record as a whole. In such an event, the board shall make alternative findings of fact.

N.C.G.S. § 115C-325(j2)(7). Respondent argues that because the statute calls for application of a 'whole record test' at this stage, it was not bound by evidentiary rulings of the case manager and was entitled to consider all the evidence presented at the hearing, specifically including the evidence disallowed by the case manager. Petitioner answers that respondent's review was limited to the 'whole record' properly before the case manager, an interpretation that would foreclose respondent's consideration of evidence excluded by the case manager.

Section 115C-325(j2)(7) further provides:

> If a majority of the board determines that the case manager did not address a critical factual issue, the board may remand the findings of fact to the case manager to complete the report to the

board. If the case manager does not submit the report within seven days receipt of the board's request, the board may determine its own findings of fact regarding the critical factual issues not addressed by the case manager. The board's determination shall be based upon a preponderance of the evidence.

*Id.*

We believe this statutory framework is consistent with petitioner's interpretation that a board initially reviewing the results of a case manager's hearing is bound by the 'whole record' admitted and considered by the case manager. However, because (j2)(7) contemplates a remand to the case manager "[i]f a majority of the board determines that the case manager did not address a critical factual issue," the school board may nevertheless view evidence excluded by the case manager but later submitted to the board in making its initial determination whether the case manager addressed all critical issues. In fact, the case manager's amended report here cited this excluded evidence.

In the case at bar, the board failed to follow statutory procedure. If a board chooses not to accept the case manager's report as submitted, then pursuant to section 115C-325(j2)(7) the board should determine either (1) that the case manager's findings of fact are not supported by substantial evidence admissible under section 115C-325, in which case it can make alternative findings of fact; or (2) that the case manager failed to consider a critical factual issue, in which case the board should remand the matter for the case manager to make additional findings of fact. Where a board's conclusion that the case manager failed to consider a critical factual issue is based upon the case manager's rulings excluding evidence, the case manager, on remand, remains bound by the provisions of N.C.G.S. § 115C-325 and within those limits may either reconsider or reaffirm those evidentiary rulings. A board may thereafter substitute its findings of fact for those of the case manager only if the case manager does not respond to the board's request within seven days.

The board here followed none of the permissible alternatives. Instead, it attached additional findings of fact to those already made by the case manager and mislabeled the result as "alternative findings of fact." Because the board did not follow proper procedures, we hold that it was bound by the case manager's findings of fact. *See* N.C.G.S. § 150B-51(b)(3).

**FARRIS v. BURKE CTY. BD. OF EDUC.**

[355 N.C. 225 (2002)]

**[4]** Our inquiry does not end here, however. We turn next to the 24 November 1998 "Amended Report of Case Manager," which has been quoted in some detail above. Section 115C-325(i1)(2) provides in relevant part:

> The case manager shall make all necessary findings of fact, based upon the preponderance of the evidence, on all issues related to each and every ground for dismissal and on all relevant matters related to the question of whether the superintendent's recommendation is justified. The case manager also shall make a recommendation as to whether the findings of fact substantiate the superintendent's grounds for dismissal.

N.C.G.S. § 115C-325(i1)(2). As noted above, we agree with the Court of Appeals that, pursuant to N.C.G.S. § 115C-325, sufficient admissible evidence was presented to the case manager to support her findings of fact and that respondent was bound by those findings of fact. However, nowhere does this statute allow the case manager to reach conclusions of law. Although the distinction between findings of fact and conclusions of law can be elusive, *see, e.g., Harris v. Walden*, 314 N.C. 284, 333 S.E.2d 254 (1985); *Dunevant v. Dunevant*, 142 N.C. App. 169, 542 S.E.2d 242 (2001), paragraphs numbered 19, 20, and 21 of the "Amended Report of Case Manager," quoted above, do not set out facts found by the case manager. These paragraphs instead amount to the case manager's conclusions of law. *See, e.g., Crump v. Board of Educ.*, 79 N.C. App. 372, 339 S.E.2d 483 (conclusion that plaintiff insubordinate based upon findings of fact), *disc. rev. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986). As such, these paragraphs are not binding on respondent. Accordingly, on remand respondent shall not consider paragraphs 19, 20, and 21 of the case manager's amended report. The holding of the Court of Appeals is affirmed as modified.

II.

**[5]** Petitioner claims that her due process rights were violated because the decision to terminate her employment was not made by an unbiased and impartial decision-maker. This contention is based upon alleged *ex parte* communication between respondent and attorney Ballew in the termination proceedings. We initially observe that the extent of Ballew's representation is not well-defined in the record. Ballew first discussed petitioner's termination with Stewart in March 1998, before petitioner was notified of the recommendation that she not be rehired. On 18 June 1998, Ballew wrote petitioner's

counsel, identifying himself as "the attorney for the Burke County School Board," but at the case manager's hearing in September and October 1998, he represented Stewart. In a letter written 9 November 1998 to the case manager, Ballew identified himself as the "Attorney for Burke County Public Schools," but at the hearing before respondent in January 1999, Ballew again argued on behalf of Stewart; in fact, respondent's findings of fact recite that "Superintendent Tony M. Stewart was present and represented by attorney Larry A. Ballew." Ballew signed respondent's answer to petitioner's appeal to superior court, and when the record of the instant appeal was settled, Ballew signed as "Attorney for Respondent." On the basis of this record, Ballew's role is undeniably equivocal.

Petitioner's allegations of *ex parte* communication between Ballew and respondent are based upon circumstantial evidence. At the end of her hearing, the case manager asked both Ballew and petitioner's counsel to submit proposed findings of fact. Ballew submitted a proposal, but the case manager ultimately drafted her own findings of fact and amended findings of fact, recommending against petitioner's dismissal. Stewart then advised petitioner that he intended to recommend to respondent that petitioner's contract not be renewed. No new evidence was heard at the hearing before respondent, but Ballew argued on behalf of Stewart. When respondent later issued its findings of fact, they were virtually identical to those submitted by Ballew to the case manager, to the point where the same mistakes could be found in both. For example, both Ballew's proposed findings to the case manager and respondent's findings misidentified petitioner by stating: "This letter was adequate to apprize *Ms. Branch* of the charges against her." (Emphasis added.) Petitioner argues that the only reasonable inference from this resemblance is that Ballew had improper *ex parte* contact with respondent that prevented respondent from properly carrying out its duties.

We have held that whenever a school board considers a case in which it might deprive a teacher of employment, "it is fundamental to the concept of due process that the deliberative body give that person's case fair and open-minded consideration." *Crump v. Board of Educ.*, 326 N.C. 603, 613, 392 S.E.2d 579, 584 (1990). However, we have also recognized that "due process is a somewhat fluid concept, and that determining what process is 'due' at a school board hearing is very different from evaluating the procedural protections required in a court of law." *Id.* at 615, 392 S.E.2d at 585.

## FARRIS v. BURKE CTY. BD. OF EDUC.

[355 N.C. 225 (2002)]

The Court of Appeals considered an analogous issue in *Hope v. Charlotte-Mecklenburg Bd. of Educ.*, 110 N.C. App. 599, 430 S.E.2d 472 (1993). In that case, the petitioner, a teacher who was dismissed on grounds of inadequate performance, insubordination, and neglect of duty, claimed a due process violation because the attorneys for the school board and for the school superintendent were members of the same firm. The Court of Appeals noted that "although the [b]oard was required to provide petitioner with all the essential elements of due process, it was permitted to operate under a more relaxed set of rules than is a court of law." *Id.* at 602, 430 S.E.2d at 474. The Court of Appeals observed that the board was responsible for making the ultimate decision, not its attorney, who acted only in an advisory capacity, and held that "[t]he possibility that the [b]oard obtained information from [its] attorney about the case does not establish a due process violation." *Id.* at 603, 430 S.E.2d at 474.

*Hope* can be distinguished from the case at bar because, as petitioner points out, a single attorney rather than different members of one firm arguably represented both respondent and Stewart at different points in the proceeding. Nevertheless, we evaluate petitioner's due process claim in light of section 115C-44(b), which provides that "[i]n all actions brought in any court against a local board of education, the order or action of the board shall be presumed to be correct and the burden of proof shall be on the complaining party to show the contrary." N.C.G.S. § 115C-44(b) (1999). Consequently, we review the record to determine whether petitioner has carried her burden of overcoming the presumption of regularity.

A petitioner claiming a due process violation must have some opportunity to create a record to rebut the statutory presumption. In instances where, as here, a petitioner has a good-faith reason to question the propriety of a board's actions, chapter 115C provides that he or she may appeal to superior court. N.C.G.S. § 115C-325(n). Although that statute does not set out the procedure to be followed in such an appeal, in practice it appears that the superior courts have been conducting hearings, *see, e.g., Taborn v. Hammonds*, 324 N.C. 546, 380 S.E.2d 513 (1989); *In re Freeman*, 109 N.C. App. 100, 426 S.E.2d 100 (1993), and the judgment of the superior court in the case at bar recites that the case came on for a hearing and was heard. Where the appeal to the superior court presents a petitioner his or her first opportunity to establish a record supporting allegations of impropriety before a board, as in the case at bar, it is incumbent upon

the petitioner to create a record supporting the allegations at that time for any further reviewing courts.

Petitioner focuses on the patent similarities between the proposed findings of fact submitted by Ballew to the case manager and the ultimate findings of fact issued by respondent. These similarities leave little doubt that respondent somehow obtained a copy of Ballew's proposal. However, although these documents were available to petitioner at the time of her appeal to superior court, she failed to establish a record supporting her contention that such contact was improper and violated her due process rights. There is no indication when the contact took place, i.e., that Ballew had improper *ex parte* contact with respondent in his capacity as attorney for Stewart before respondent reached its decision. As observed in *Hope*, the board is the decision-making body, and there is no reason based on this record to make any assumption other than that the respondent, after making its decision, asked Ballew to prepare findings of fact. Similar procedures are routine in civil cases, where a judge is permitted to ask the prevailing party to draft a judgment. *See* N.C.G.S. § 1A-1, Rule 58 (1999); *see also Stachlowski v. Stach*, 328 N.C. 276, 401 S.E.2d 638 (1991). In the absence of evidence to the contrary, N.C.G.S. § 115C-44(b) constrains us to adopt an interpretation of the record consistent with proper action by all parties. Accordingly, we hold that petitioner was not denied her due process rights. This assignment of error is overruled.

MODIFIED AND AFFIRMED.

Justice ORR concurs in the result only.